# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

BRITTANY F.,

                              Plaintiff,

      v.                                   1:18-CV-1365
                                                 (ATB)

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                              Defendant.

---

JOSEPHINE GOTTESMAN, ESQ., for Plaintiff
JEAN M. DEL COLLIANO, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 7).

## I.  PROCEDURAL HISTORY

On June 1, 2015, plaintiff filed concurrent applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning April 1, 1992. (Administrative Transcript ("T") 147-54, 176).  Plaintiff's applications were denied initially on September 2, 2015. (T. 50-81)  Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Arthur Patane on

October 26, 2017.[1] (T. 35-49, 84-85). On January 8, 2018, the ALJ issued an order denying plaintiff's applications. (T. 10-17). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on September 27, 2018. (T. 1-3).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

---

[1]Plaintiff initially presented for an administrative hearing on July 6, 2017, however the proceeding was adjourned in order for plaintiff to obtain representation. (T. 28-32).

2

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was twenty-five years old on the date of the administrative hearing. (T. 36). She lived in a second floor apartment at her parent's home, for which she paid rent with disability benefits. (T. 39). Plaintiff received special education services in high school, and graduated with a Regent's Diploma. (T. 38).

Plaintiff was employed by three different companies at the time of the hearing, however only one actively scheduled her to work. (T. 36-37). Plaintiff worked four to eight hours per month serving concessions at Times Union Center. (T. 37-38). One of

her other employers stopped giving her work when she "messed up" on the job, and they discovered that she was autistic.  (*Id.*).  She was also employed as a bagger at Price Chopper, but was not receiving hours from them at the time of the hearing.  (T. 47-48).  Plaintiff was in the process of applying for other jobs, and had obtained vocational services through Access VR.  (T. 38, 42).  According to the plaintiff, her job coach believed she could work a part-time position where she was "very comfortable."  (T. 42).  Plaintiff had never been employed full-time.  (*Id.*).

Plaintiff was diagnosed with autism, and suffered from anxiety and depression.  (T. 40).  Her depression often caused her to experience extreme exhaustion, making it difficult to work.  (T. 40-41).  She treated with medical management, as well as counseling.  (T. 41).  It was difficult for plaintiff to leave her house, as she was "sometimes scared of the outside world."  (T. 43).  Her anxiety was triggered when strangers got too close to her.  (T. 44).  Plaintiff socialized with friends primarily through a shared interest of making costumes and attending cosplay conventions.  (T. 44-45).  Plaintiff attended such events both locally and out of state; estimating that approximately 1,000 people or more attended the three- to four-day events.  (T. 45).  As of the date of the hearing, she had attended more than 20 conventions in her lifetime; noting that her recent anxiety and depression symptoms had made it more difficult.  (T. 46).  Plaintiff further testified that she found the role-playing aspect of these events to be therapeutic, as she could "pull away" from herself for that period of time. (T. 47).

## IV.  **THE ALJ'S DECISION**

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful

activity ("SGA") since her disability onset date.[2] (T. 13). At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: obesity; anxiety, depression, and autism. (*Id.*). At step three of the evaluation, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment. (*Id.*). In making this determination, the ALJ considered Listings 12.04 (Depressive, Bipolar, and Related Disorders) and 12.06 (Anxiety and Obsessive-Compulsive Disorders), but found that plaintiff's mental impairments failed to satisfy the paragraph (B) criteria.

At step four, the ALJ found that plaintiff had the RFC for medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that she was limited to performing simple, routine work with frequent, never consistent, interaction with the public and co-workers. (T. 15).

Next, the ALJ found that plaintiff had no past relevant work. (T. 16). However, after considering plaintiff's age, education, work experience, and RFC; and relying on the Medical Vocational Guidelines ("Grids") and SSR 85-15; the ALJ concluded that jobs existed in significant numbers in the national economy that plaintiff could perform. (T. 16). Accordingly, the ALJ determined that plaintiff was not disabled though the date of his decision. (T. 28).

V.     **ISSUES IN CONTENTION**

Plaintiff raises many arguments in contention, alleging legal error at almost every step of the ALJ's analysis. The Commissioner contends that the ALJ's decision was

---

[2] Although plaintiff did perform some work activity after her disability onset date, the work did not rise to the level of SGA. (T. 13).

supported by substantial evidence and based upon the proper application of the correct legal standards. For the following reasons, the court agrees that the ALJ erred in several aspects of his disability analysis, compelling remand for further administrative proceedings consistent with this opinion.

## DISCUSSION

## VI. <u>LISTED IMPAIRMENT</u>

### A. **Legal Standard**

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition or conditions meet *all* of the specific medical criteria of particular listed impairments. *Pratt v. Astrue,* No. 7:06-CV-551, 2008 WL 2594430, at *6 (N.D.N.Y. June 27, 2008) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)). If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

### B. **Application**

Plaintiff argues that the ALJ failed to consider Listing 12.10 (Autism Spectrum Disorder) in his step three analysis. Plaintiff further disputes the ALJ's finding that plaintiff did not meet the paragraph (B) criteria of the mental listings he did consider. (Plaintiff's Brief ("Pl.'s Br.") at 20) (Dkt. No. 11). Defendant maintains that the ALJ

7

properly considered the paragraph (B) criteria, and the ALJ's findings of less than marked limitations in the four relevant domains precluded plaintiff from meeting any of the disputed listings. (Defendant's Brief ("Def.'s Br.") at 4-7) (Dkt. No. 12).

In order to satisfy his burden at step three, a plaintiff "must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques." *Knight v. Astrue*, 32 F. Supp 3d 210, 218 (N.D.N.Y. 2012) (citing 20 C.F.R. § 416.926(b)). In turn, "the ALJ must consider all relevant evidence in [the] case record" in determining whether a listing has been met or equaled under step three. *Graf v. Berryhill*, No. 3:18-CV-93, 2019 WL 1237105, at *4 (D. Conn. Mar. 18, 2019) (other citations omitted). "Additionally, the ALJ is required to articulate the specific reasons justifying his decision that the claimant does or does not meet the relevant listing." *Id.* It is well settled that "[w]here the claimant's symptoms as described by medical evidence appear to match those described in the Listings, the ALJ must explain a finding of ineligibility based on the Listings." *Kovacevic v. Chater,* No. 94-CV-600, 1995 WL 866425, at *8 (W.D.N.Y. Sept. 28, 1995) (citing *Booker v. Heckler,* No. 83 Civ. 5300, 1984 WL 622, at *3 (S.D.N.Y. July 19, 1984))*; see also Kerr v. Astrue,* No. 09–CV–01119 (GLS), 2010 WL 3907121, at *3–5 (N.D.N.Y. Sept.7, 2010); *Davis v. Astrue,* No. 6:09-CV-186 (LEK/GHL), 2010 WL 2545961, at *3–5 (N.D.N.Y. June 3, 2010).

As previously discussed, the ALJ considered two listed impairments at step three of his analysis: 12.04 (Depressive, Bipolar, and Related Disorders) and 12.06 (Anxiety and Obsessive-Compulsive Disorders). (T. 13). To meet both listings, plaintiff was

required to establish the criteria of paragraphs A and B, or the criteria of paragraphs A and C. 20 C.F.R. § 404, Subpart P, App. 1, Listings 12.04, 12.06. The paragraph A criteria requires medical documentation of the relevant disorder, while the paragraph (B) criteria requires extreme limitation of one area or a marked limitation of two areas of mental functioning, which include (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. *Id.* Paragraph C requires a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *Id.*[3]

At the outset, the court agrees that the ALJ failed to consider the relevant listing 12.10 (Autism Spectrum Disorder) in his decision. To meet this listing, plaintiff was required to establish the criteria of paragraphs (A) and (B). 20 C.F.R. § 404, Subpart P, App. 1, Listings 12.10. However, as the Commissioner correctly notes, the paragraph (B) criteria for listing 12.10 are identical to the paragraph (B) criteria for listings 12.04 and 12.06, which were considered by the ALJ and found deficient for purposes of

---

[3]The parties do not appear to dispute the ALJ's implied finding that plaintiff met the paragraph (A) criteria of both listings. Furthermore, plaintiff does not raise any objection to the ALJ's finding that plaintiff did not meet the paragraph (C) criteria. Thus, the court limits the scope of its analysis to whether the ALJ's paragraph (B) determination is supported by substantial evidence.

establishing disability. Thus, had the ALJ's paragraph (B) analysis been supported by substantial evidence, any error in omitting consideration of listing 12.10 would have been harmless.

To that end, the ALJ found that plaintiff had moderate limitations in the four broad areas of functioning; ultimately concluding that the paragraph (B) criteria were not satisfied. However, the ALJ failed to adequately "address or explain why he rejected substantial conflicting record evidence [at step three], and in failing to do so committed legal error." *Cepeda v. Berryhill*, No. 18 Civ. 7304, 2019 WL 7483937, at *14 (S.D.N.Y. Dec. 12, 2019), report and recommendation adopted, 2020 WL 58236 (S.D.N.Y. Jan 6, 2020); *see also Briest v. Comm'r of Soc. Sec.*, No. 5:07-CV-121 (FJS), 2010 WL 5285307, at *3 (N.D.N.Y. Dec. 17, 2010) (remand warranted where "in reaching his decision with regard to [paragraph (B)], the ALJ neither cited medical evidence to explain his findings nor addressed contradictory medical evidence."); *Szarowicz v. Astrue*, No. 11-CV-277S, 2012 WL 3095798, at *5 (W.D.N.Y. July 30, 2012) ("It is particularly important for an ALJ to specifically address conflicting probative evidence with respect to the step three analysis, because a claimant whose condition meets or equals that of a Listing is deemed disabled per se and eligible to receive benefits.").

Of particular concern is the ALJ's paragraph (B) analysis pertaining to interacting with others and the ability to adapt or manage oneself. In support of his conclusion that plaintiff was moderately limited in interacting with others, the ALJ only cited to inconsistencies in plaintiff's description of her own social functioning, with the

exception of noting that plaintiff was described as "pleasant and cooperative" by her medical providers. (T. 13-14). While there may be inconsistencies in plaintiff's description of her social abilities, plaintiff's struggles to interact with others are consistently displayed throughout the record. In January 2016, plaintiff presented for an initial neurodevelopmental evaluation at the requests of her primary care providers due to concerns with communication and behavior. (T. 544). After administering a battery of tests, the examiner concluded that plaintiff "struggles significantly to communicate her affect and exhibits very limited insight into social relationships," and further that "[h]er conversational ability is limited in range and reciprocity." (T. 505). In the same vein, consultative psychologist Arlene Broska, Ph.D. opined that plaintiff suffered from moderate to marked limitations for relating adequately with others without support. (T. 502). Although plaintiff participated in a community cosplay group, Dr. Broska noted that plaintiff's mother had to accompany her to these events, as plaintiff's "social judgment is not always accurate and [plaintiff] could potentially get herself into dangerous situations." (T. 501). As a pre-teen, plaintiff experienced a similar situation when she attempted to make "friends" over the internet and exchanged inappropriate pictures; resulting in police involvement. (T. 501). Dr. Broska further noted plaintiff's inability to make eye contact throughout the first half of the consultative examination. (T. 500). Plaintiff also exhibited aprosodic[4] speech at various times throughout the examination, although she quickly corrected herself. (T.

---

[4]Aprosodia is a disorder characterized by the inability to express or comprehend affective or nonaffective tonal aspects of speech. *See* https://www.medlink.com/article/aprosodia.

500). Despite affording Dr. Broska's opinion "great weight" in a later portion of his decision, the ALJ failed to address Dr. Broska's opined social limitations in his step three analysis, much less explain his basis for adopting a less extreme limitation than Dr. Broska found in her medical source statement.

Moreover, the ALJ determined that plaintiff had moderate limitations in her ability to adapt or manage herself. (T. 14). In support of his conclusion, the ALJ once again relied on inconsistencies in plaintiff's own description of her limitations. (*Id.*). The ALJ further cited generally to "objective evidence in the record" showing that claimant had appropriate grooming and hygiene, and no problem getting along well with providers. (T. 14). Once again, this analysis was deficient to the extent the ALJ neglected to examine or explain away the probative evidence of record documenting plaintiff's significant limitations in this domain. For example, Dr. Broska noted that plaintiff was unable to manage her own money without assistance. (T. 502). Moreover, plaintiff's "apartment" was the second floor of her family's home, and Dr. Broska indicated that plaintiff was "not yet able to maintain a household independently." (T. 501). Plaintiff did not have a driver's license because she was scared to drive. (T. 404). Plaintiff reported to Dr. Broska that when she gets excited, "she will run from one end of the house to the other and hop[,] clench her fist and tense her body." (T. 499). She occasionally rocked. (*Id.*). Moreover, despite her providers noting that she exhibited appropriate grooming and hygiene, plaintiff represented that she needed reminders to change her underclothes, bathe, and wash her hands at the appropriate time. (T. 402-03).

The Commissioner argues that further explanation constituting substantial evidence supporting the ALJ's step three analysis is found in other sections of the ALJ's decision, namely the step four RFC analysis. It is well settled that "[a]n ALJ's [step three determination based on a deficient analysis] may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted). However, in this case, the ALJ's failure to reconcile the conflicting evidence at step three, coupled with the ALJ's flawed RFC assessment and evident failure to develop the record (*See Point VII, supra*), prevents this court from determining whether the ALJ's step three determination is supported by substantial evidence. Thus, remand is warranted so that the ALJ may address the conflicting evidence of record and adequately explain his reasoning as to why plaintiff meets or does not meet the paragraph (B) criteria of all the relevant listed impairments. *See Flake v. Comm'r of Soc. Sec.,* No. 7:15-CV-1128 (GTS/WBC), 2016 WL 7017355, at *6 (N.D.N.Y. Nov. 10, 2016) ("There is conflicting evidence in the record regarding whether Plaintiff met the criteria for [the relevant listing,] and because the ALJ failed to discuss this conflicting evidence, at step three or elsewhere, it cannot be determined whether the ALJ's conclusion at step three is supported by substantial evidence.").

## VII. <u>RFC/WEIGHING EVIDENCE/DUTY TO DEVELOP RECORD</u>

### A. **Legal Standards**

#### 1. **RFC**

RFC is "what [the] individual can still do despite his or her limitations.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a

narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at \*11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at \*7).

## 2. Weighing Evidence

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at \*2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at \*2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at \*2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at \*8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

## 3. Duty to Develop the Record

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is

represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."). Furthermore, "[t]he duty of an ALJ to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." *Dickson v. Astrue*, No. 1:06-CV-511 (NAM/GHL), 2008 WL 4287389, at *13 (N.D.N.Y. Sept.17, 2008).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability, and additional information is needed to reach a determination. 20 C.F.R. §§ 404.1512(e), 416.912(e).[5] Although the ALJ must attempt to fill in any "clear gaps" in the administrative record, "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information. *Rosa v. Callahan*, 168 F.3d at 79, n.5.

### B.    Application

Plaintiff argues that the ALJ's RFC evaluation did not account for the full

---

[5] Effective March 26, 2012, the Commissioner amended these regulations to remove former paragraph (e) and the duty it imposed on ALJs to re-contact a disability claimant's treating physician under certain circumstances. The current regulations apply to plaintiff's case. *See Jimenez v. Astrue*, No. 12 Civ. 3477, 2013 WL 4400533, at *11 (S.D.N.Y. Aug. 14, 2013) (noting that even though the regulations were amended to remove the provision requiring the ALJ to recontact a treating physician to resolve an ambiguity in the record, the regulations still "contemplate the ALJ recontacting the treating physicians when 'the additional information needed is directly related to that source's medical opinion'").

spectrum of plaintiff's non-exertional impairments, and remand is thus required for further administrative proceedings. (Pl.'s Br. at 25-26). Moreover, plaintiff contends that the ALJ failed to fully develop the administrative record, rendering his step four analysis further flawed. (*Id.* at 26-27). The Commissioner asserts that the ALJ's RFC is supported by substantial evidence. (Def.'s Br. 7-17).

The only opinion evidence of record is that of consultative psychologist Dr. Broska, based on her one-time examination of plaintiff on August 19, 2015. (T. 498-502). The court discussed several of Dr. Broska's findings upon examination in the previous section of this decision. In addition, Dr. Broska stated that plaintiff's demeanor and responsiveness to questions was cooperative, and her manner of relating, social skills, and overall presentation were fair. (T. 500). Dr. Broska noted that "[it] appeared [plaintiff] was trying very hard during the evaluation to interact with the examiner in a socially correct manner." (*Id.*). Plaintiff exhibited an anxious affect and neutral mood, with fair insight and judgment. (T. 500-01).

Based on her examination of the plaintiff, Dr. Broska opined that there was no evidence plaintiff was limited in her ability to follow and understand simple directions and instructions or perform simple tasks independently. (T. 501). She also found that plaintiff had no limitation for attention, concentration or memory, or maintaining a regular schedule. (T. 502). There was, however, evidence for moderate limitations for making appropriate decisions. (*Id.*). Last, Dr. Broska opined that plaintiff exhibited "moderate to marked" limitations for performing complex tasks consistently without support, relating adequately with others without support, and appropriately dealing with

stress without support.  (*Id.*).

In his written decision, the ALJ acknowledged Dr. Broska's opinion and afforded it "great weight," based on its "consisten[cy] with the overall evidence, that shows infrequent treatment and improvement with routine care, as well as the examination results."  (T. 15).

Despite the great weight afforded to Dr. Broska's opinion, the ALJ failed to adequately account for plaintiff's moderate to marked limitations in dealing with stress in his RFC assessment, an error requiring remand.  "[B]ecause stress is 'highly individualized,' [and] mentally impaired individuals 'may have difficulty meeting the requirements of even so-called "low-stress[ ] jobs," ' . . . the Commissioner must . . . make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work." *McCann v. Comm'r of Soc. Sec.*, No. 1:18-CV-472, 2020 WL 207134, at *3 (W.D.N.Y. Jan. 13, 2020) (quoting *Collins v. Colvin*, No. 15-CV-423, 2016 WL 5529424, at *3 (W.D.N.Y. Sep. 30, 2016) (other citations omitted)). "Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments." *Id.* (citing *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996)). Thus, "[a]n ALJ is required to specifically inquire into and analyze a claimant's ability to manage stress." *Id.* (citing *Collins*, 2016 WL 5529424, at *3). "An ALJ's failure to explain or account for stress limitations in the RFC—particularly when opined by an acceptable medical source given great weight—is an error that requires remand." *Id.* (citing *Booker v. Colvin*, No. 14-CV-407S, 2015 WL 4603958, at *3

(W.D.N.Y. July 30, 2015) (other citations omitted).

In this case, despite affording Dr. Broska's opinion great weight, the ALJ's RFC assessment neither addresses nor expressly accounts for plaintiff's specific stress limitation as set out by Dr. Broska's opinion. Despite the Commissioner's argument to the contrary, the ALJ's RFC assessment limiting plaintiff to simple, routine work does not account for the factors influencing Plaintiff's ability to handle stress at work. *See Id.* at *4. The ALJ did not make the requisite specific findings about the nature of Plaintiff's stress, the circumstances that trigger it, and how those factors affect her ability to work. Thus, the ALJ's RFC assessment was not supported by substantial evidence. *See id.* (citing *Corbeil v. Saul*, No. 17-CV-01321, 2019 WL 2590606, at *6 (W.D.N.Y. June 25, 2019)) (remand necessary as the ALJ "was required to do more than merely limit [the plaintiff's] RFC to simple work" where doctors had identified moderate limitations in dealing with stress); *Cooley v. Berryhill*, No. 6:16-CV-06301, 2017 WL 3236446, at *12 (W.D.N.Y. July 31, 2017) (although ALJ's RFC assessment limited Plaintiff to simple, unskilled work, remand required as "the ALJ did not expressly discuss how Plaintiff's stress limitations were incorporated into the ALJ's RFC finding"); *Booker*, 2015 WL 4603958, at *3 (remand required "for the ALJ to consider the extent, if any, that Plaintiff's difficulties with stress impact his ability to perform the non-exertional demands of unskilled, competitive, remunerative work on a sustained basis").

As a separate matter, the court seriously questions whether the ALJ's RFC for social interaction is supported by substantial evidence. Dr. Broska's opinion stated that

plaintiff suffered from "moderate to marked" limitations for relating adequately with others without support. Although the ALJ did not acknowledge this opined limitation in his step four analysis, he nevertheless afforded Dr. Broska's opinion "great weight," without any noted exceptions. (T. 15). The ALJ then went on to craft an RFC that limited plaintiff to "frequent, never consistent, interaction with the public and co-workers." (*Id.*). The courts in this Circuit have inconsistently ruled on whether a moderate limitation for interacting with others is substantial evidence supporting claimant's ability to perform work requiring frequent social interaction. *Compare Wightman v. Comm'r of Soc. Sec.*, No. 18-CV-6295L, 2019 WL 2610712, at *2 (W.D.N.Y. June 26, 2019) ("ALJ's finding that plaintiff's moderate limitation in social interaction permits him to tolerate "frequent" contact with supervisors, coworkers and the public was not erroneous."); *with Nelson v. Comm'r of Soc. Sec.*, No. 8:14-CV-0983 (GTS), 2015 WL 3936939, at *6 (N.D.N.Y. June 26, 2015) (acknowledging remand was warranted because the "great weight" afforded to medical opinion that plaintiff had moderate limitations in her ability to interact with others did not correspond to the ALJ's step four decision that plaintiff could perform past work requiring frequent interaction with others). However, in this case Dr. Broska opined that plaintiff suffered "moderate to marked" limitations in this area, and the ALJ failed to adequately reconcile his RFC conclusion with her opinion, or the other medical evidence of record, to support his finding that plaintiff maintained the ability to engage in frequent interaction with the public and co-workers. Accordingly, and in the absence of any testimony from a vocational expert that could have, conceivably, rendered this error

harmless, the ALJ is instructed upon remand to re-assess plaintiff's social limitations and prepare an RFC that is supported by substantial evidence in the record.

Last, it appears that the ALJ erred in failing to adequately develop the record with plaintiff's complete mental health treatment history. At the administrative hearing, plaintiff testified that she was seeing a mental health provider for psychotherapy twice a month.[6] (T. 41). Moreover, plaintiff's treatment records indicate that she previously attended therapy with a social worker, and had a "pending appointment with a psychiatrist." (T. 471). Despite these indications that plaintiff received some form of mental health treatment during the relevant disability period, there are no records from such mental health providers in the administrative record, nor any indication of the extent of treatment plaintiff received in the past. The ALJ had a duty to review the records of plaintiff's providers for her mental health impairments before reaching a conclusion regarding plaintiff's mental health limitations, especially considering the dearth of mental health treatment records in evidence.[7] Upon remand, the ALJ is instructed to further develop the medical evidence to include plaintiff's complete history of mental health treatment. *See Parker v. Colvin,* No. 3:13-CV-1398, 2015 WL 928299, at *13 (D. Conn. Mar. 4, 2015) (remand warranted where record did not include relevant mental health treatment records, despite the ALJ relying on inconsistencies in the longitudinal treatment record and noting that plaintiff had

---

[6]At the time of the administrative hearing, plaintiff was actively treating at the Center for Disability Services, where she had attended four therapy sessions to date. (T. 41).

[7]The medical treatment records included in the administrative record are almost exclusively progress notes from plaintiff's primary care physicians, with the exception of a January 28, 2016 initial neurodevelopmental evaluation conducted at the request of plaintiff's primary care physicians.

"received minimal mental health treatment").

## VIII. <u>STEP FIVE</u>

### A. **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v.*

*Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted).  When significant nonexertional impairments[8] are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity.  *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

## B.    Application

Plaintiff contends that the ALJ was obligated to consult a vocational expert at step five of the sequential evaluation process, and that his reliance on the Grids was improper based on plaintiff's significant non-exertional impairments.  (Pl.'s Br. at 22-24).  For the reasons outlined above, the ALJ's analysis with regard to plaintiff's RFC was both flawed and based on an incomplete record.  In turn, the ALJ's step five determination, which was necessarily based on the flawed RFC determination, is not supported by substantial evidence and must be revisited.

Upon remand, the ALJ shall not rely solely on the Grids unless substantial evidence supports a finding that plaintiff can perform the basic mental demands of unskilled work, i.e. the ability on a sustained basis to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  If plaintiff's

---

[8] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands.  20 C.F.R. §§ 404.1569a(c), 416.969a(c).

23

non-exertional limitations "significantly limit"[9] the range of work permitted by her exertional limitations, the ALJ shall obtain vocational testimony in order to determine the extent, if any, to which plaintiff's limitations have eroded the occupational base of such work. *See Young v. Berryhill,* No. 3:17-CV-970, 2018 WL 2947860, at *14 (D. Conn. June 12, 2018) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **REVERSED**, and this action is remanded pursuant to Sentence Four of 20 U.S.C. § 405 for further proceedings as discussed above, and it is

**ORDERED**, that judgment be entered for the **PLAINTIFF**.

Dated: February 19, 2020

Andrew T. Baxter
U.S. Magistrate Judge

---

[9]According to the Second Circuit, a limitation becomes significant when it causes an "additional loss of work capacity beyond a negligible one or . . . one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Bapp v. Bowen*, 802 F.2d at 606.